**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CARLTON EZZELL,

        Plaintiff,

vs.                                        Case No:  3:13-cv-166-J-MCR

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**MEMORANDUM OPINION AND ORDER[1]**

      This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

      Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") on April 1, 2010, alleging disability beginning on November 6, 2006. (Tr. 66).  The Social Security Administration ("SSA") denied his application initially on June 15, 2010, and upon reconsideration on October 20, 2010.  Id.  Plaintiff then requested a hearing before an Administrative Law Judge (the "ALJ") on November 1, 2010. Id. The hearing was held on October 28, 2011, in Jacksonville, Florida. Id. The ALJ found Plaintiff not disabled on January 27, 2012.  (Tr. 77).  Subsequently, Plaintiff

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 18).

requested a review by the Appeals Council, which was denied on January 28, 2013.

(Tr. 5-11).  Therefore, having exhausted all administrative remedies, Plaintiff timely filed

his Complaint (Doc. 1) on February 14, 2013, seeking judicial review of the ALJ's final

decision under 42 U.S.C. § 405(g).

## II.    NATURE OF DISABILITY CLAIM

### A.    <u>Basis of Claimed Disability</u>

Plaintiff claims to be disabled since November 6, 2006, due to a neck fusion,

Hepatitis C, left knee surgery, and degenerative disc disease.  (Tr. 259).

### B.    <u>Summary of Evidence Before the ALJ</u>

Plaintiff was forty-nine years old at the time the ALJ rendered his opinion.  (Tr.

88).  Plaintiff completed school through the tenth grade and received a general

equivalency diploma.  <u>Id.</u>  Plaintiff had past relevant work as a plumber, pipe fitter,

operating engineer, dump truck driver, and tractor trailer driver.  (Tr. 94-97, 103-04, 109,

261-62, 274-77).

On November 6, 2006, Plaintiff suffered a neck injury and a right shoulder injury

when a co-worker put him in a headlock.  (Tr. 93-94, 364).  On November 27, 2006,

Plaintiff underwent an MRI of his right shoulder and his cervical spine.  (Tr. 355-58). The

MRI of Plaintiff's shoulder revealed some isolated atrophy in the muscle around the right

shoulder and a "probable labral tear of the superior labrum."  <u>Id.</u>  The MRI of Plaintiff's

cervical spine indicated cervical spondylosis with "spinal stenosis most pronounced at

the C6-7 and to a lesser degree C5-6."  (Tr. 358).  The MRI also revealed "probable

compression of an existing right C7 nerve root due to a right paracentral disc at the C6-

7 level," a "small left paracentral disc protrusion at the C3-4 level," and "multilevel left sided neuroforaminal narrowing." Id.

On December 15, 2006, Plaintiff was evaluated by Dr. Kirby L. Turnage, who noted that Plaintiff was experiencing "fairly intense pain" in his cervical spine. (Tr. 364). Plaintiff's shoulder injury was less severe and only caused "minimal" symptoms. (Tr. 365).

On January 26, 2007, Plaintiff was evaluated by Dr. Robert P. Jensen who performed a nerve conduction study. (Tr. 376-79). Dr. Jensen found Plaintiff suffered from right C6-C7 radiculopathy, which was "fairly acute and significant in the setting of chronic cervical spondylosis." (Tr. 379). Dr. Jensen opined Plaintiff needed a neurosurgery referral as he was "very likely to need neck surgery." Id. On March 29, 2007, Plaintiff underwent cervical fusion without complication by Dr. Cyril T. Sebastian. (Tr. 412-13).

Plaintiff was seen by Dr. Hung Tran for a consultative medical examination because of complaints of headache and neck pain on September 3, 2008. (Tr. 461). Dr. Tran noted Plaintiff had pain in his neck, but no limitations in motion. (Tr. 463). Additionally, Plaintiff's upper extremities were normal with no pain and he was able to lift twenty pounds with both hands. Id. Plaintiff's lower extremities were also normal with no pain, he could sit normally bilaterally, and he could squat normally without pain. Id. Dr. Tran diagnosed Plaintiff with "[o]ld operation on neck" and "headache." Id.

On December 19, 2009, Plaintiff injured his left knee stepping down from a dump truck at his job. (Tr. 518). Plaintiff went to the emergency room for treatment the same day the knee injury occurred. (Tr. 472- 75). Plaintiff was treated and released with

prescriptions for Lortab and Naprosyn. Id.  On December 21, 2009, Plaintiff saw Dr. Ana Maria Romero at Doctor's Care for treatment of his knee injury.  (Tr. 489-491).  He was diagnosed with a knee strain and released with restrictions of no carrying, climbing ladders, pulling, squatting, or commercial driving.  (Tr. 490-491).

On February 17, 2010, Plaintiff underwent left knee partial meniscectomy and ACL reconstruction, which was performed by Dr. Steven M. Crenshaw.  (Tr. 521-24). Plaintiff had no complications.  (Tr. 515, 523).  On March 18, 2010, Plaintiff was seen for a follow- up where he reported he was not taking any medications.  (Tr. 513).  On June 1, 2010, Plaintiff was seen at Hillard Medical Center for headaches.  (Tr. 548).  It was noted that it had been a long time since Plaintiff had been seen in their office.  Id. Plaintiff was diagnosed with cervicalgia and referred for pain management.  (Tr. 548-49).

On June 14, 2010, Plaintiff returned to Dr. Crenshaw for his four month check-up. (Tr. 556).  By this time, Plaintiff had completed physical therapy and was making the transition to a home program.  Id.  Dr. Crenshaw recommended Plaintiff return to work with the restrictions of avoiding climbing and kneeling.  Id.

On July 28, 2010, Plaintiff was seen in the Emergency Room at Baptist Medical Center by Dr. David Pietrasuik with complaints of headaches, neck pain and stiffness, and twitching in the upper extremities. (Tr. 563-574).  Plaintiff remarked that the degree of pain at the time of the examination was minimal and Dr. Pietrasuik noted Plaintiff was not in "acute distress."  (Tr. 564-65).  A CT scan of Plaintiff's head was normal.  (Tr. 569).  Plaintiff was discharged with one prescription for oxycodone without a refill, and was told he needed to obtain pain management services.  (Tr. 570).

On October 19, 2010, Dr. Nicolas Bancks completed a physical residual functional capacity assessment on Plaintiff. (Tr. 697- 704).  Dr. Bancks opined: In regard to exertional limitations, Plaintiff could occasionally lift and/or carry (including upward pulling) twenty pounds, frequently lift and/or carry (including upward pulling) ten pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight hour work day, sit (with normal breaks) for a total of about six hours in an eight hour workday, push and/or pull  (including operation of hand and/or foot controls) on an unlimited basis (other than shown for lift and/or carry).  (Tr. 698).  Dr. Bancks also recommended Plaintiff avoid climbing and kneeling on his left knee.  (Tr. 699).  With respect to postural limitations, Plaintiff could occasionally climb ramps, stairs, ladders, rope, and scaffolds; balance; stoop; kneel; crouch; and crawl.  (Tr. 699).  For manipulative limitations, Plaintiff was limited in reaching all directions (including overhead) and unlimited in handling (gross manipulation), fingering (fine manipulation), and feeling (skin receptors).  (Tr. 700).  Plaintiff had no visual or communicative limitations. (Tr. 700, 701).  Finally, in regard to environmental limitations, Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; as well as hazards (machinery, heights).  (Tr. 701).

On October 18, 2010, Plaintiff began treatment at the University of Florida, Division of Gastroenterology for his Hepatitis C.  (Tr. 707).  Plaintiff was treated by Dr. Xiaoyu Li.  (Tr. 708).  Plaintiff reported that he was taking Lortab for headaches at the time.  (Tr. 707).  Dr. Li concluded Plaintiff suffered from chronic hepatitis. (Tr. 708).  Dr. Li recommended Plaintiff reduce or stop his use of Lortab for migraines and use

Excedrin instead.  Id.  Dr. Li concluded Plaintiff was healthy with no medical problems.
Id.

On January 20, 2011, Plaintiff was seen by Dr. Day for pain management.  (Tr.
714).  Dr. Day noted Plaintiff walked from the waiting room and was not in distress
during the evaluation.  Id.  Plaintiff was given a prescription for Hydrocodone and was
informed he needed to find a pain management clinic he could afford.  (Tr. 714-15).

On March 1, 2011, Plaintiff was seen by Dr. Carlos Arce, a neurosurgeon, for
headaches, neck pain, arm pain, pain on both sides of his face, pain in his hands,
nausea, and vomiting.  (Tr. 728).  Plaintiff was taking Roxicet for these pain issues four
times per day.  Id.  Dr. Arce opined that Plaintiff's symptoms were "somewhat out of
proportion" with the MRI findings and that surgery would not decrease Plaintiff's pain.
(Tr. 729).  Dr. Arce believed Plaintiff's main problem was his high intake of pain
medication and recommended that Plaintiff go through a detoxification program to wean
himself off the pain medication and then come back for an evaluation to determine if he
would benefit from any surgical treatment.  Id.

On May 19, 2011, Dr. Kenneth Powell, Plaintiff's treating physician, submitted a
questionnaire form to the Social Security Administration entitled "Medical assessment of
ability to perform work related activities (physical)."  (Tr. 740-43).  In the questionnaire,
Dr. Powell opined: (1) Plaintiff could occasionally lift and/or carry twenty pounds and
could never lift and/or carry any weight over twenty pounds; (2) Plaintiff could sit for six
hours, stand for three hours, and walk for one hour; (3) Plaintiff could never climb, could
frequently balance, and could only occasionally stoop, crouch, kneel, and crawl; (4)
Plaintiff's pain would frequently interfere with his attention and concentration; (5) Plaintiff

would need a job that allowed him to shift positions at will; (6) Plaintiff would need to take unscheduled breaks; and (7) Plaintiff would be expected to miss more than seven days per month of work.  Id.

On September 24, 2011, Plaintiff was treated in the emergency room for complaints of back pain since running out of pain medication in August 2011.  (Tr. 762).  Plaintiff was discharged with pain medications, but was told that he would not be prescribed anymore.  (Tr. 763).

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy,

then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.  (Tr. 68).  At step one, the ALJ found Plaintiff had engaged in substantial gainful activity since November 6, 2006, the alleged onset date.  Id.  At step two, the ALJ determined Plaintiff had the following severe impairments: disorder of the spine, disorder of the left knee, and a substance abuse disorder.  Id.  In addition, the ALJ noted Plaintiff's Hepatitis C; yet, she found it caused no more than a minimal limitation and was therefore, non-severe.  Id.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).  Id.  At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light or sedentary work activity as defined in 20 C.F.R § 404.1567(a) with the following exceptions:

> a need to change positions between sitting and standing at will; no more than occasional bilateral upper extremity reaching overhead, climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; no concentrated exposure to pulmonary irritants and hazards such as unprotected heights or moving machinery; and no more than simple routine repetitive tasks.

Id.  Based on this RFC, the ALJ found Plaintiff incapable of performing his past relevant work as an operating engineer.  Id.  However, at step five, considering the testimony of

a vocational expert, the ALJ found other jobs existing in significant numbers in the national economy which Plaintiff could perform.  (Tr. 109-11).

## III.    ANALYSIS

### A.    <u>The Standard of Review</u>

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson</u>, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  <u>Foote</u>, 67 F.3d at 1560; <u>accord</u> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.   Issue on Appeal

Plaintiff argues one issue on appeal: that the ALJ erred by not giving appropriate weight to the opinions of Plaintiff's treating physician, Dr. Kenneth Powell.  (Doc. 21, p. 5).  Specifically, Plaintiff takes the position that the ALJ failed to provide adequate reasons for giving no significant weight to the opinions provided by Dr. Powell in a questionnaire dated May 19, 2011. The Commissioner contends substantial evidence supports the ALJ's decision to assign minimal weight to Dr. Powell's opinion.  (Doc. 22, p. 4).  The Court will examine Plaintiff's claims.

On May 19, 2011, Dr. Powell, Plaintiff's treating physician for pain management, completed a questionnaire provided by Plaintiff's attorney. (Tr. 740-43).  In the questionnaire, Dr. Powell opined: (1) Plaintiff could occasionally lift and/or carry twenty pounds and could never lift and/or carry any weight over twenty pounds; (2) Plaintiff could sit for six hours, stand for three hours, and walk for one hour; (3) Plaintiff could never climb, could frequently balance, and could only occasionally stoop, crouch, kneel, and crawl; (4) Plaintiff's pain would frequently interfere with his attention and concentration; (5) Plaintiff would need a job that allowed him to shift positions at will; (6) Plaintiff would need to take unscheduled breaks; and (7) Plaintiff would be expected to miss more than seven days per month of work.  Id.  Plaintiff argues the ALJ did not properly consider these opinions.

As an initial matter, the Court notes Plaintiff is correct that a treating physician's opinion will be granted controlling weight if it is consistent with other medical evidence and is well-supported by acceptable clinical and diagnostic techniques.  20 C.F.R. § 404.1527(d)(2).  Treating physicians are granted such deference because they are

most able to provide a detailed, longitudinal picture of the patient's medical status.  Id.

Indeed, an ALJ is required to give a treating physician's opinion "substantial or

considerable" weight unless "good cause" is shown to the contrary.  Lewis v. Callahan,

125 F.3d 1436, 1140 (11th Cir. 1997); accord 20 C.F.R. § 404.1527(d)(2).  The Eleventh

Circuit has found "good cause" to exist where: (1) the opinion was not bolstered by the

evidence; (2) the evidence supported a contrary finding; or (3) the opinion was

conclusory or inconsistent with the doctor's own medical records.  Wright v. Barnhart,

153 F.App'x 678, 684 (11th Cir. 2005).  Further, if the ALJ decides to grant less than

substantial or considerable weight to a treating physician, he must clearly articulate the

reasons for doing so.  MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

Failure to do so is reversible error.  Id.

In the instant case, the ALJ referenced the opinions of Dr. Powell and set forth, in

detail, the limitations imposed by Dr. Powell.  (Tr. 74, n. 2).  Additionally, the ALJ

indicated the weight she gave Dr. Powell's opinions as follows:

> Although it has been carefully considered, no significant
> weight is given to the opinion of Dr. Kenneth Powell, as it is
> not corroborated by treatment record [sic], or supported by
> the rational [sic].

(Tr. 74).  While the Court finds the typos contained in the above passage somewhat

disconcerting, it is satisfied that the ALJ's decision to discount Dr. Powell's opinion is

sufficient to satisfy the good cause requirement.

First, the Court notes that many of the opinions contained in the May 19, 2011

questionnaire are consistent with the RFC established by the ALJ.  For example, Dr.

Powell's opinions that Plaintiff could occasionally lift and/or carry twenty pounds and

could never lift and/or carry any weight over twenty pounds are accounted for in the

limitation to less than the full range of light or sedentary work.[2]  The same is true of Dr.

Powell's opinions that Plaintiff could sit for six hours, stand for three hours, and walk for

one hour and would need a job which allowed him to shift positions at will.  Those

limitations are accounted for in the restriction to sedentary and/or light work with the

need to change positions from standing and sitting at will.  Additionally, Dr. Powell's

restrictions on Plaintiff's abilities to balance, stoop, crouch, kneel, and crawl are

accounted for in the RFC where the ALJ limited Plaintiff no more than occasional

balancing, stooping, kneeling, crouching, and crawling.

As for the remaining limitations imposed by Dr. Powell, namely that: Plaintiff's

pain would frequently interfere with his ability to concentrate,[3] Plaintiff could never

climb,[4] Plaintiff would need to take unscheduled breaks, and Plaintiff would be expected

to miss more than seven days per month of work, the undersigned finds the ALJ's

decision that such are not corroborated by the medical records is sufficient to establish

good cause.  Although Plaintiff argues Dr. Powell is in a better position than Dr.

Crenshaw to opine on Plaintiff's head and neck pain, the Court observes no treatment

---

[2] "Sedentary" work is defined as work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).  "Light" work is defined as work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

[3] It is arguable, as the Commissioner notes, that the ALJ also accepted Dr. Powell's limitation on Plaintiff's ability to concentrate due to pain by limiting Plaintiff to work requiring no more than simple, routine, repetitive tasks.  However, in an abundance of caution, the undersigned will also consider whether the ALJ's decision to discount this limitation is supported by substantial evidence.

[4] The ALJ found Plaintiff should never climb ladders, ropes, or scaffolds, but could occasionally climb ramps or stairs.  (Tr. 69).

records from Dr. Powell in the transcript.[5]   Instead, the Court notes that the treatment records for Plaintiff's pain associated with his head and neck come from the following providers:  Dr. Hung V.  Tran (Tr. 461-64), Dr. David Pietrasiuk (Tr. 563-570, 591-97), Dr. Charles Day (Tr. 714- 715), and Dr. Carlos A. Arce (Tr. 728-29).  A review of those records, as well as the other records in the transcript, reveal no support for the extreme limitations from Dr. Powell that Plaintiff would need to take unscheduled breaks and would be expected to miss more than seven days per month of work, that Plaintiff's pain would frequently interfere with his attention and concentration, or that Plaintiff could never climb.  Indeed, Plaintiff does not point to any record evidence supporting these limitations and the undersigned was unable to locate any.

As there is no evidence corroborating Dr. Powell's opinions that Plaintiff would need to take unscheduled breaks and would be expected to miss more than seven days per month of work, that his pain would frequently interfere with his attention and concentration, or that he could never climb, the Court finds the ALJ's discounting of these opinions to be supported by substantial evidence.  See e.g. Deihl v. Comm'r Soc. Sec., No. 1:07-cv-149, 2008 WL 408463, at *15 (W.D. Mich. Feb. 12, 2008) (not error for the ALJ to discredit treating doctor's opinion that plaintiff would be required to take 2-3 unscheduled breaks each day as doctor's own records did not support same nor did other medical records); Jacobs v. Astrue, No. 07-cv-681, 2008 WL 4601767, at *9-10 (W.D. Wis. June 20, 2008) (ALJ did not commit error in discrediting treating doctor's opinions, including opinion that plaintiff would need to take unscheduled breaks, as

---

[5] As neither the ALJ nor Defendant argued Dr. Powell was not a treating physician, the Court will accept Dr. Powell as such.

being inconsistent with treatment notes even though ALJ did not point out specific

inconsistencies).

## IV.    CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported

by substantial evidence.  Accordingly, the Clerk of the Court is directed to enter

judgment **AFFIRMING** the Commissioner's decision and, thereafter, to close the file.


**DONE** and **ORDERED** in Jacksonville, Florida this __3rd__ day of January, 2014.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record